GEORGIA POWER CO., Plaintiff, Counter–defendant, Appellee,

v.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 84, Defendant, Counter–claimant, Appellant.

No. 92–8584.

United States Court of Appeals, Eleventh Circuit.

July 16, 1993.

J. Michael Walls, Walls & Corlew, Atlanta, GA, for appellants.

Jesse P. Schaudies, Jr., Troutman Sanders, Christopher S. Miler, Robert P. Edwards, Atlanta, GA, for appellees.

Before BLACK and CARNES, Circuit Judges, and RONEY, Senior Circuit Judge.

RONEY, Senior Circuit Judge:

In this appeal from a summary judgment vacating an arbitration award, we affirm the judgment of the district court which held that the damages awarded by the board of arbitrators were punitive in nature and therefore impermissible in light of the arbitrators' finding that punitive damages were not warranted under the circumstances of this breach of a collective bargaining agreement.

Plaintiff Georgia Power Company and Defendant International Brotherhood of Electrical Workers, Local 84 (Union) executed a Collective Bargaining Agreement effective July 1, 1987. This Agreement, which was in force at all times material to this action, provides for arbitration of certain disputes between the Company and the Union.

The arbitration award grew out of a grievance filed by the Union concerning a Pilot Incentive Pay Program established by the defendant at one of its 61 power plants and in one of its eight geographic divisions. In brief, the final award, concurred in by two of the three Arbitrators, found that the implementation of this program violated the collective bargaining agreement, that the employees not covered by the program suffered no monetary loss, and that the Company was not liable for punitive damages, but that the non-participating employees were entitled to compensation under the Non–Discrimination paragraph of the collective bargaining contract. The Company sought to have that damage portion of the award vacated by the district court.

The Arbitration Board held that the Company had violated the Non–Discrimination and Wage Rates provisions at Paragraphs 69 and 50–51 of the Agreement. Paragraph 69 provides:

> The Company and the Union ... agree that the provisions of this Agreement shall continue to apply to all employees covered by this Agreement without discrimination and that in carrying out the respective obligations under this Agreement there will be no discrimination against any qualified employee or applicant on account of race, creed, color, sex, age (40 and over), national origin, handicap or status as a veteran.

Paragraph 50 states: "For all employees of the Company covered by this Agreement, wages at the rates shown in Exhibit 'A' ... shall be the base rates paid for 40 hours work per work week." Paragraph 51 deals with wage rates for all employees covered by the Agreement who are on a monthly rate of pay.

The district court disagreed with the Arbitrators' interpretation of the non-discrimination paragraph of the contract, but thought itself bound by the Arbitrators' interpretation of the non-discrimination provision. "The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987). This is true even if the court is convinced that the arbitrator has committed serious error.

Nevertheless, the district court held that the damages awarded were in fact punitive damages, not compensatory, and vacated the award, following the Arbitrators' own decision that punitive damages were not warranted under the facts of the case.

 A careful review of the district court's well-crafted 22–page ORDER, that sets forth in detail the arbitration and the history of this litigation, reveals that it is due to be affirmed. *Georgia Power Co. v. Int'l Bhd. of Elec. Workers, Local 84*, 825 F.Supp. 1023 (N.D.Ga.1992). The court followed the correct standard for considering such a case, a standard that is equally applicable to our de novo review of the district court's order. In a summary judgment ruling we review de novo the district court's determination and apply the same legal standards that bound the district court. *Bruno's, Inc. v. United Food & Commercial Workers Int'l Union, Local 1657*, 858 F.2d 1529, 1531 (11th Cir. 1988). Substantive review of the arbitration award "is limited to a determination of whether [the] award is irrational, whether it

fails to draw its essence from the collective bargaining agreement or whether it exceeds the scope of the arbitrator's authority." *Butterkrust Bakeries v. Bakery Workers Int'l Union, Local No. 361*, 726 F.2d 698, 699 (11th Cir.1984).

■ We affirm the decision of the district court that the damages awarded by the Arbitration Board are punitive in nature, for the reasons stated in that ORDER. An arbitrator's denomination of an award as compensatory will not prevent the court from determining that the award is in fact punitive. *Baltimore Regional Joint Bd. v. Webster Clothes*, 596 F.2d 95, 98 (4th Cir.1979); *Westinghouse Elec. Corp., Aerospace Div. v. IBEW Local 1805*, 561 F.2d 521, 523–24 (4th Cir.1977), *cert. denied*, 434 U.S. 1036, 98 S.Ct. 771, 54 L.Ed.2d 783 (1978).

■ The Arbitrators' own findings reveal that the damages awarded in fact were punitive. For the damage award to be validly compensatory, there must be a causal relationship between the Company's breach of the Agreement and the loss claimed by the Union. *Desert Palace, Inc. v. Local Joint Executive Bd. of Las Vegas*, 679 F.2d 789, 794 (9th Cir.1982); *Baltimore Regional Joint Bd. v. Webster Clothes*, 596 F.2d 95, 98 (4th Cir.1979). The Board made no finding that the non-participating employees lost anything by reason of the Company's violation. The Board's findings did not address whether Georgia Power would have implemented the incentive program company-wide without the initial pilot program. There were no findings concerning the bonuses the non-participating employees would have received had they been allowed to participate in the program. In the absence of any findings concerning the position in which the non-participating employees would have been had the Company not violated the Agreement, the Arbitration Board has failed to find any causal relationship between the Company's breach and the Union's loss. No basis exists for the Arbitrators' conclusion that the Company's violation of the Non–Discrimination provision caused non-participating employees to suffer a monetary loss of any sort traditionally justifying an award of compensatory damages. The monetary relief ordered by the Arbitration Board must be considered punitive.

■ The Union alternatively argues that even if the award is punitive, it should be enforced because an award of punitive damages draws its essence from the collective bargaining agreement. The Union cites to case law from this circuit concluding that an arbitrator has authority to award punitive damages unless the Agreement specifically prohibits the award of such damages. *See Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1386–87 (11th Cir.1988); *Willoughby Roofing & Supply Co. v. Kajima Int'l*, 598 F.Supp. 353 (N.D.Ala.1984), *aff'd*, 776 F.2d 269 (11th Cir.1985). This general authority to award punitive damages is irrelevant, however, in light of the Arbitrators' finding that punitive damages were not warranted under the facts of this case.

During the course of the arbitration proceedings, the Union consistently argued that the Company had acted in bad faith and urged the Arbitrators to award punitive damages. Initially the Arbitrators rejected the Union's position in a Tentative Opinion, stating:

> The evidence has not established ... that the Company in implementing the Pilot Incentive Pay Program acted wilfully or wantonly. The implementation occurred only after the Company had determined that it had negotiated in good faith with the Union to impasse. While the acts of the Company may not have constituted negotiation, or may have even been surface bargaining, the evidence has not established any willful or wanton conduct on the part of the Company in connection with the Pilot Incentive Pay Program.

This finding was reaffirmed in both an Addendum and in the Final Opinion. Even if authority existed for punitive damages, the Arbitrators' own findings foreclose any argument that a punitive damage award was warranted in this case.

AFFIRMED.[1]

---

1. Carried with the case is the Appellee's Motion to Strike Portions of Appellant's Reply Brief and Appendices. That motion is denied.